IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MICHELE FRANDSEN,<br><br>  Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF ALASKA FAIRBANKS, S. BRADLEY MORAN, Dean College of Fisheries and Oceans Sciences, in his official and individual capacities, and DOES 1-6,<br><br>  Defendants. | Case No. 4:20-cv-00016-JWS<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br>**Dockets 10, 16**<br><br>**ORDER ON MOTION TO EXTEND DUE DATES FOR AMENDMENT OF COMPLAINT AND SERVICE OF PROCESS ON DOES**<br>**Docket 27** |

## I. MOTIONS PRESENTED

At docket 10, Defendants University of Alaska Fairbanks ("UAF") and S. Bradley Moran, UAF's Dean of the College of Fisheries and Ocean Sciences ("Moran"; collectively "Defendants") filed a motion for summary judgment asking the court to dismiss all claims in this case based on sovereign and qualified immunity. Plaintiff Michele Frandsen ("Frandsen" or "Plaintiff") responded at docket 14, and Defendants replied at docket 20. Plaintiff filed a motion for partial summary judgment on the issue of qualified immunity at docket 16. Defendants responded at docket 23. Plaintiff replied at docket 28.

At docket 27, Plaintiff filed a motion seeking to extend the due date for filing a motion to amend and the due date for filing service of process on DOES 1–6. Defendants responded at docket 30. Plaintiff replied at docket 31.

Oral argument was not requested as to these motions, and the court finds that oral argument would not be of assistance to the court.

## II. BACKGROUND

Frandsen was employed at UAF for approximately 30 years in various capacities. UAF is one campus in the larger University of Alaska system (the "University"). From approximately 2001, she worked in the College of Fisheries and Ocean Sciences ("CFOS") within the Alaska Sea Grant program ("ASG"). Most recently she worked as a Research Coordinator for ASG, an exempt position. In 2018 Frandsen was laid off after CFOS eliminated the ASG Research Coordinator position.

ASG is one of thirty-three sea grant programs across the country, and it receives a majority of its funding through the National Oceanic and Atmospheric Administration. However, it also relies on state funds that are appropriated to the University.[1] The University has seen a decrease in state funding that has affected all units, including CFOS.[2] Between fiscal year 2016 and 2018, CFOS had to absorb approximately $2.4 million in state appropriation reductions.[3] During fiscal year

---

[1] Doc. 17-1 at p. 4.
[2] Doc. 11 at ¶ 4.
[3] *Id.* at ¶ 5.

*Frandsen v. University of Alaska Fairbanks, et al.*　　　　　　　　　　　　　　Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27　　　　　　　　　　　　　　　　　　　　　　　Page 2
Case 4:20-cv-00016-JWS　　Document 32　　Filed 05/17/21　　Page 2 of 18

2019, CFOS received $113,000 less in general funds compared to fiscal year 2018.[4] In prior years, CFOS had made non-salary reductions to handle the lost funding, but by 2018 the continued decrease in funding resulted in CFOS cutting positions within the college.[5]

On June 28, 2018, Moran, as Dean of CFOS, met with Frandsen to inform her that CFOS was reducing the appropriations dedicated to ASG by eliminating her position effective September 28, 2018.[6] The position's duties would be reassigned to ASG's director, associate director of research, and program manager.[7] Frandsen informed Moran that her termination date was only one month shy of her retirement eligibility. To accommodate her retirement eligibility, the last day of her employment was pushed back to October 31, 2018. Moran also provided written notice of the layoff on July 10, 2018.[8] The notice stated that the layoff was in accordance with University Regulation 04.07.110—which governs layoffs due to funding, reorganizing, or workload—and that it did not reflect discredit upon her or her work performance. The notice offered Frandsen a term position, Fiscal Technician 2, as an alternative to layoff. It also notified her that, pursuant to the applicable regulations, she could request review of the layoff decision by the

---

[4] *Id.* at ¶ 6.
[5] *Id.* at ¶ 7; Doc. 10-5 at p. 1.
[6] Doc. 10-5; Doc. 10-9 at p. 1.
[7] Doc. 10-3.
[8] Doc. 10-7.

*Frandsen v. University of Alaska Fairbanks, et al.*     Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27     Page 3
Case 4:20-cv-00016-JWS    Document 32    Filed 05/17/21    Page 3 of 18

University's Chief Human Resources Officer within ten days, wherein she could provide her reasons for challenging the layoff and any evidence supporting her challenge.

Frandsen declined the alternate position, and on July 16, 2019, she filed a request for review to the University's Chief Human Resources Officer, Keli Hite McGee ("McGee").[9] In her grievance letter she questions why reductions in state appropriations would affect her particular position at ASG, and she questions the necessity of her layoff by asserting that budgetary restraint is not otherwise being adhered to within ASG. She also asks why her position, of all the positions within ASG, was selected for elimination given the criteria set forth in the regulation, such as length of employment, her status as a regular employee, and her duties. McGee subsequently met with UAF's Human Resources Director Bradley Lobland and CFOS's Human Resource Consultant Bridget Thimsen on July 26, 2018, to review Frandsen's layoff.[10] McGee upheld the layoff and provided Frandsen notice of her decision in a letter dated September 27, 2018.[11] The notice confirmed that the layoff was in response to CFOS's decision to make employment cuts to address reduced state appropriations, and it informed Frandsen that CFOS either eliminated, combined, or did not fill at least six other positions. Frandsen's last day of work was October 31, 2018.

---

[9] Doc. 10-8 at p. 1; Doc. 10-9.

[10] Doc. 10-10.

[11] Doc. 10-5.

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 4
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 4 of 18

Frandsen filed this lawsuit in May of 2020. She argues that she had a constitutional property right to her job and was discharged without being afforded adequate due process, citing *Loudermill v. Cleveland Board of Education*.[12] In addition to UAF and Moran, Frandsen included unnamed University officials, DOES 1–6, in her complaint. Count I of her complaint alleges a violation of her constitutional due process rights against all the defendants. Count II alleges Moran and the unnamed individual officials violated 42 U.S.C. § 1983 by denying her adequate due process rights in conjunction with her termination. Count III alleges that UAF breached its duty of good faith and fair dealing.

Defendants request summary judgment in their favor. They argue that UAF and Moran and DOES 1-6, to the extent they are sued in their official capacity, have sovereign immunity from suit in federal court. They argue that qualified immunity protects the individual defendants to the extent they are sued in their personal capacity. Frandsen filed a separate motion for partial summary judgment, asking the court to rule that qualified immunity does not protect the individual defendants, named in their personal capacities, from her § 1983 due process claim.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] The

---

[12] 470 U.S. 532 (1985).

[13] Fed. R. Civ. P. 56(a).

*Frandsen v. University of Alaska Fairbanks, et al.*     Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27     Page 5
Case 4:20-cv-00016-JWS     Document 32     Filed 05/17/21     Page 5 of 18

materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[14] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[15] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[17] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[18] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[19] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[20] However, the non-moving party may not rest upon mere

---

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[15] *Id.*
[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[17] *Id.* at 323.
[18] *Id.* at 323–25.
[19] *Anderson*, 477 U.S. at 248–49.
[20] *Id.* at 255.

*Frandsen v. University of Alaska Fairbanks, et al.* Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27 Page 6
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 6 of 18

allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[21]

## IV. DISCUSSION

### A. Sovereign Immunity

Defendants argue that the doctrine of sovereign immunity requires the court to dismiss all claims against UAF. "The Eleventh Amendment prohibits federal courts from hearing suits against an unconsenting state."[22] "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature."[23] It is established that the University is an instrumentality of the State of Alaska.[24] As such, it is immune from suit in this court unless a statute abrogates that sovereignty or the state waives its immunity.[25] Neither situation applies here. Section 1983 does not abrogate sovereign immunity, and there is no other federal statute implicated in Frandsen's complaint.[26] Alaska has not consented to suit in federal court for claims

---

[21] *Id.* at 248–49.

[22] *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991).

[23] *Id.*

[24] *Townsend v. Univ. of Alaska*, 543 F.3d 478, 481 (9th Cir. 2008).

[25] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

[26] *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985); *Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014).

*Frandsen v. University of Alaska Fairbanks, et al.*     Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27     Page 7
Case 4:20-cv-00016-JWS    Document 32    Filed 05/17/21    Page 7 of 18

based on procedural due process or good faith and fair dealing.²⁷ Indeed, Frandsen presents no argument to the contrary. Consequently, Frandsen's claims against UAF, which are set forth in Count I and Count III, must be dismissed.

Frandsen argues that the court should somehow override Eleventh Amendment sovereign immunity by exercising pendent jurisdiction under § 1367(a) based on Alaska law, which provides consent to suit for quasi-contractual and tort claims in state court. The court's pendent jurisdiction does not provide a means for Frandsen to pursue claims against the University in federal court: "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."²⁸ The state has to unequivocally consent to be sued in federal court.

Defendants assert that Frandsen's procedural due process claim and § 1983 claim against Moran and the unnamed individual defendants in their official capacities likewise are subject to dismissal based on Eleventh Amendment sovereign immunity. Indeed, Eleventh Amendment immunity "remains in effect when State officials are sued for damages in their official capacity."²⁹ "[This] is so because . . . a judgment against a public servant in his official capacity imposes liability on the entity that he represents."³⁰ That is to say, when official capacity suits seek retroactive monetary damages, they are effectively seeking to impose liability on the

---

²⁷ The state has authorized suits in certain circumstances for quasi-contractual and tort claims, but only as to suits brought in state court. Alaska Stat. § 09.50.250.

²⁸ *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

²⁹ *Graham*, 473 U.S. at 169.

³⁰ *Id.* (internal quotation marks omitted).

*Frandsen v. University of Alaska Fairbanks, et al.*     Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27     Page 8
Case 4:20-cv-00016-JWS     Document 32     Filed 05/17/21     Page 8 of 18

state entity that the official represents that must then be paid for from state funds.[31] As a result, federal statutory and constitutional claims for money damages are barred against state officials sued in their official capacities.[32] However, under the doctrine established in *Ex parte Young*,[33] official capacity claims are not barred to the extent prospective relief is sought. Eleventh Amendment immunity does not bar "suits for prospective declaratory and injunctive relief against state officers, sued in the official capacities, to enjoin an alleged ongoing violation of federal law."[34]

Here, Frandsen's demand for relief includes "damages as requested and other actions the court deems appropriate."[35] This request for damages means that Frandsen's claims against the individual defendants in their official capacities cannot proceed. Frandsen argues that she does in fact mention reinstatement in her complaint, which under Ninth Circuit law constitutes prospective relief.[36] The court finds that the complaint does not adequately indicate that she is pursuing a claim for prospective injunctive relief apart from damages. Again, her demand for relief at the end of the complaint specifically lists damages as the relief sought, and her § 1983 claim states only that she is entitled to an award of damages and attorney's fees and

---

[31] *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

[32] *Dittman v. California*, 191 F.3d 1020, 1026–27 (9th Cir. 1999).

[33] 209 U.S. 123 (1908).

[34] *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).

[35] Doc. 1 at p. 5.

[36] *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 842 (9th Cir. 1997).

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 9
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 9 of 18

costs. While the general constitutional claim does refer to "reinstatement" it does so only in passing:

> The Defendant's failure to honor Mrs. Frandsen's due process rights is a violation of her State and federal Constitutional rights and she is entitled to damages, reinstatement, lost wages, lost benefits especially including loss of increase value to her pension, and other damages as the court deems appropriate.[37]

This statement of relief is one for damages; it does not constitute a separate request for injunctive relief against the University officials in their official capacity.[38]

## B.  Qualified Immunity

Defendants also seek summary judgment as to the remaining personal-capacity claims against Moran and DOES 1–6 based on qualified immunity. Frandsen, in turn, seeks a ruling that these defendants are not entitled to qualified immunity. Qualified immunity protects government officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[39] It allows officials to make errors in judgment, thereby protecting "all but the plainly incompetent or those who knowingly violate the law."[40] When qualified immunity is asserted at the summary judgment stage, the court, viewing the facts in the light most favorable to the non-

---

[37] Doc. 1 at p. 4.

[38] To the extent Frandsen would hereafter seek to amend her complaint to seek only injunctive, not monetary, relief as to her claims against the individual defendants sued in their official capacity, such an amendment would be futile for the reasons discussed more specifically below.

[39] *Demaree v. Pederson,* 887 F.3d 870, 878 (9th Cir. 2018).

[40] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

*Frandsen v. University of Alaska Fairbanks, et al.*     Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27     Page 10
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 10 of 18

moving party and drawing inferences in that party's favor, determines (1) whether the official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the conduct.[41]  "Qualified immunity applies either where there was no constitutional violation or where the constitutional violation was not clearly established."[42]

As to the first prong of the analysis, the court considers whether Moran and the unnamed University officials violated Frandsen's procedural due process rights by failing to provide an adequate hearing in conjunction with her layoff.  "A procedural due process claim has two distinct elements:  (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."[43]  Here, the parties do not dispute that Frandsen had a protectable property interest in her job given her employment classification within the University.  Defendants instead argue no constitutional violation occurred because Frandsen was provided adequate procedural protections before being terminated.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands."[44]  "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a

---

[41] *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

[42] *Id.*

[43] *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998).

[44] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 11
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 11 of 18

meaningful time and in a meaningful manner."[45] In the context of the termination of a public employee, generally due process requires "some kind of hearing prior to the discharge . . . ."[46] This means notice of the charges supporting termination, an explanation of the evidence in support of termination, and an opportunity for the employee to present his or her side of the story.[47] Defendants argue that the pre-termination process provided here was constitutionally sufficient because she was given notice of the layoff, an explanation as to why, and an opportunity to be heard. They argue that the hearing required under *Loudermill* need not be extensive; that is, a trial-like procedure is not required as long as there has been an opportunity for the employee to present an oral or written objection before being terminated. Frandsen counters that such a limited pre-termination hearing has been considered constitutionally sufficient only when there are robust post-termination proceedings provided.

The situation here is distinguishable from the cases discussed by the parties. Frandsen was not terminated for cause. Rather, the reason for Frandsen's layoff is that Moran decided to eliminate her position as part of his effort to respond to CFOS's continued budget reductions. Indeed, Frandsen does not allege or present any evidence to suggest that the decision to fire her was based on the merits of her performance or her conduct. That is, there are no charges against her to support

---

[45] *Brewster*, 149 F.3d at 983 (internal quotation marks omitted).

[46] *Loudermill*, 470 U.S. at 542 (internal quotation marks omitted).

[47] *Id.* at 546.

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 12
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 12 of 18

cause for termination that would then trigger the need for a more thorough presentation and review of evidence. The question then becomes, in the absence of a termination for cause where an employee is not fired for reasons personal to her, what procedure is required to satisfy due process.

The majority of courts directly addressing this issue have applied the "reorganization exception" to the *Loudermill* hearing requirement.[48] These cases have found that, in the absence of any fact suggesting pretext, a public employee is not entitled to a hearing where a reorganization or cost-cutting decision unrelated to individual qualifications or conduct results in the termination of a position.[49] The reasoning is that a legitimate reorganization "is aimed at positions of employment rather than at individual employees" and therefore "a pre-termination hearing would be a futile exercise."[50] The Ninth Circuit, however, has not directly considered the issue. In *Clements v. Airport Authority of Washoe County*,[51] the plaintiff, a public employee, lost her job after an agency-wide reorganization resulted in the elimination of her position. She argued that she was personally targeted for termination under the guise of reorganization because of her whistle-blowing activities. The district court granted summary judgment for the government employer. The Ninth Circuit

---

[48] *See Edmiston v. Idaho State Liquor Div.*, No. 1:11-cv-395, 2015 WL 506496, at *1 (D. Idaho Feb. 6, 2015) (collecting cases).

[49] *Schulz v. Green Cnty.*, 645 F.3d 949, 952 (7th Cir. 2011); *Misek v. City of Chicago*, 783 F.2d 98, 100–01 (7th Cir. 1986); *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 24 (1st Cir. 2005).

[50] *Rodriguez-Sanchez v. Municipality of Santa Isabel*, 658 F.3d 125, 130 (1st Cir. 2011).

[51] 69 F.3d 321 (9th Cir. 1995).

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 13
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 13 of 18

reversed. It found that the lack of any pre-termination hearing whatsoever, coupled with a potentially biased post-termination proceeding, supported her due process claims and prevented summary judgment in favor of the government. *Clements*, however, involved the presence of disputed facts about the legitimacy of the restructuring and the personal nature of her firing. It is distinguishable from the situation here where there was a pre-termination opportunity to be heard and where there is no evidence to suggest that the elimination of Frandsen's position was aimed to harm her specifically.

Even assuming the Ninth Circuit rejects the "reorganization exception" and requires a pre-termination hearing of some kind before termination, *Clements* does not shed light on what specific process might be due a plaintiff when she is terminated due to a cost-saving reduction in staff with no allegation or evidence of pretext. As noted above, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances."[52] The minimal requirements are notice and meaningful opportunity to be heard,[53] with the aim being to prevent "mistaken or unjustified deprivation of life, liberty or property" and not the deprivation itself.[54] The process provided to Frandsen clearly meets these minimal

---

[52] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted).

[53] *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 717 (9th Cir. 2011) ("The Due Process Clause, however, does not require that the agency grant a formal hearing. All that is required before a deprivation of a protected interest is notice and opportunity for hearing *appropriate to the nature of the case*." (internal quotation marks omitted)).

[54] *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 14
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 14 of 18

requirements given the circumstances of her termination. She was provided three-months' notice and informed that the termination was due to budget decisions that resulted in her position being eliminated and her duties being reassigned. She had an opportunity to present a written objection to the decision and provide any evidence she thought relevant. Her objection was considered by the University's Chief Human Resource Officer, who was not involved in the initial termination decision and who upheld it as being part of CFOS's budget reductions.

Frandsen argues more robust hearing procedures should have been provided at some point. However, the Due Process Clause does not always mandate a trial-like procedure.[55] In *Mathews v. Eldridge*, the Supreme Court set forth a balancing test for determining how much process is due in any given situation.[56] The test is as follows:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[57]

Applying this balancing test to the circumstances presented here supports the court's decision that the process provided to Frandsen prior to her termination was

---

[55] *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1074 (9th Cir. 2015); *see also Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082–83 (9th Cir. 2010) (noting the different ways that due process can be satisfied and noting that it does not necessarily require something formal or adversarial).

[56] 424 U.S. 319, 335 (1976).

[57] *Id*.

*Frandsen v. University of Alaska Fairbanks, et al.* Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27 Page 15
Case 4:20-cv-00016-JWS Document 32 Filed 05/17/21 Page 15 of 18

constitutionally sufficient. To the extent the first and third factors—Frandsen's interest and the government's interest—are balanced, the second factor in the *Mathews* test tips in favor of a more minimal, informal opportunity to be heard because the risk of some error playing a part in the Frandsen's layoff was low—the termination did not involve any accusations against or discrediting of Frandsen, nor is there any suggestion that the elimination of her position was pretext for firing her without cause.

Frandsen argues that McGee's review was not constitutionally sufficient because she failed to consider all the questions Frandsen raised about her position being chosen for elimination. However, McGee's letter setting forth her decision in fact confirmed that she researched the layoff as requested and verified that the elimination of the position was part of CFOS's broader staffing reductions for budgetary reasons. Given the balance discussed above, a more detailed accounting is not required under due process in these circumstances.

Even if Frandsen's termination required more process than was provided, qualified immunity nonetheless applies, because the issue is not beyond debate given the case law discussed above. In order for the right to a more thorough termination process to be considered clearly established, "existing precedent 'must have placed the statutory or constitutional question beyond debate.'"[58] This simply is not the case here given the fact that many courts have found little to no process is needed when

---

[58] *Martinez*, 943 F.3d at 1275 (quoting *Shafter v. Padilla*, 138 S. Ct. 2582 (2018)).

termination is due to legitimate cost-cutting measures. Even assuming the Ninth Circuit without question requires some pre-termination hearing in the case of a budgetary layoff, the precise procedural protections required by due process in such a situation are not clearly delineated in case law. What is clear is that due process can be met without an in-person hearing in some circumstances.[59] The University officials acted reasonably when, in accordance with the University's regulations, they provided Frandsen adequate notice, an explanation, and a pre-termination chance to provide a written objection and obtain an impartial review.

**C.     Motion to Amend**

At docket 27, Frandsen filed a motion to extend the due dates for amending the complaint to add the now-identified DOES 1–6 and for serving process on those individuals. For the reasons stated in Defendants' response brief at docket 30, the request is without merit. Frandsen has failed to show the requisite diligence or good cause for modifying the scheduling order to allow a motion to amend. Moreover, any amendment to name DOES 1–6 would be futile given the court's decision that sovereign immunity and qualified immunity protects the officials involved in Frandsen's termination from her due process claims.

### V.     CONCLUSION

Based on the preceding discussion, Defendants' motion for summary judgment at docket 10 is GRANTED. The claims against Defendants are dismissed.

---

[59] *See, e.g., ASSE*, 803 F.3d at 1074.

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27                                         Page 17

Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 17 of 18

Plaintiff's motion for partial summary judgment at docket 16 and the motion to extend the amendment deadline at docket 27 are DENIED.

IT IS SO ORDERED this 17th day of May, 2020, at Anchorage, Alaska.

*/s/ John W. Sedwick*
JOHN W. SEDWICK
Senior United States District Judge

*Frandsen v. University of Alaska Fairbanks, et al.*  Case No. 4:20-cv-00016-JWS
Order Regarding Dockets 10, 16, and 27  Page 18
Case 4:20-cv-00016-JWS   Document 32   Filed 05/17/21   Page 18 of 18